IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MICHAEL AISENBERG,
    Plaintiff,

v.                                                       Civil No. 1:22cv125 (DJN)

RELIANCE STANDARD
LIFE INSURANCE CO.,
    Defendant.

## MEMORANDUM ORDER
### (Granting Motion to Determine Sum Certain in Plaintiff's Favor)

This matter comes before the Court on Plaintiff Michael Aisenberg's ("Plaintiff") Motion to Determine Sum Certain. (ECF No. 54 ("Motion").) Plaintiff moves the Court to determine whether Reliance Standard Life Insurance Co. ("Defendant") has properly calculated the benefits owed to Plaintiff, considering the Court's recent determination that Defendant abused its discretion in denying Plaintiff his long-term disability benefits, (ECF No. 53), which constituted the second time that the Court had found Defendant to have abused its discretion. In response to Plaintiff's Motion, the Court directed briefing on the issue, and both parties have submitted their respective pleadings, rendering the matter ripe for adjudication. (ECF Nos. 57–59.) For the reasons stated herein, the Court finds that Defendant has abused its discretion for a third time by determining that Plaintiff's earned-income Social Security benefits, as compared to social security benefits received due to his disability, can be offset against his long-term disability benefits. The Court thus GRANTS Plaintiff's Motion to Determine Sum Certain and concludes that Defendant may not offset his monthly gross long-term disability benefit by the earned-

income retirement benefit that he receives from Social Security. Defendant shall forthwith disburse funds to Plaintiff consistent with this Memorandum Order.

## I.  BACKGROUND

This matter commenced over two years ago, when Plaintiff appealed Defendant's determination that he was not entitled to long-term disability benefits after having undergone a serious open-heart surgery in July of 2020, which rendered him unable to complete the material duties of his job as an attorney. (ECF No. 53 at 3.) The Senior District Court Judge T.S. Ellis, III, granted partial summary judgment and remanded the case on February 21, 2023, finding that Defendant had abused its discretion by failing to assess how the risk of future harm affected Plaintiff's disability status and by not considering whether less stressful attorney positions existed in the national economy. (*Id.* at 5.) On remand, Defendant maintained its position and determined that Plaintiff was not entitled to long-term disability benefits under its Plan. (*Id.*)

Plaintiff appealed for a second time, and the undersigned found that Defendant had again abused its discretion. The Court concluded so, because Defendant's interpretation of its Disability Plan's language was inconsistent, its actions on remand did not follow the instructions provided by Judge Ellis and Defendant refused to consider scholarly articles and the opinion of Plaintiff's doctors on the relationship between cardiovascular health and stress. (*Id.* at 36.) The Court thus directed Defendant to "provide Plaintiff with payment of back benefits and interest dating to January 12, 2021, the first day that Defendant retracted benefits under the Plan" and any other benefits Plaintiff was entitled to under the Plan. (*Id.* at 35.) The parties conferred and provided their own respective calculations on the amount of benefits that Defendant owes Plaintiff for having not paid him his long-term disability benefits during this litigation, and the monthly net benefit moving forward. (ECF No. 57 at 1–2.)

Disagreement over Plaintiff's monthly net benefit led to the instant dispute, which the Court ordered the parties to brief. In their briefings, the parties identify two points of disagreement. First, the parties do not agree that the Court has jurisdiction to entertain Plaintiff's Motion, as Plaintiff has not exhausted his administrative remedies with respect to Defendant's determination regarding its offset policy. (ECF No. 58 at 2.) The second dispute goes to the merits of Plaintiff's Motion, as the parties dispute whether Defendant "may properly offset and reduce his monthly gross benefit by retirement income he receives from Social Security," as Defendant began collecting Social Security in 2020, when he was 69 years old, not due to his disability but due to being entitled to it as an earned-income benefit. (*Id.*)

"Benefit offsets are common features of [long-term disability] plans," as they are designed to prevent claimants from receiving disability benefits both from an ERISA-governed plan, like that administered by Defendant, as well as disability benefits from the Social Security Administration ("SSA"). *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir. 1996). Under Defendant's plan, Defendant may subtract — that is, offset — "Other Income Benefits" received by a claimant from the gross monthly benefit afforded to them under Defendant's Plan. (ECF No. 7 ("AR") at 21.) Defendant's Plan defines "Other Income Benefits" as benefits "*resulting from the same* Total Disability for which a Monthly Benefit is payable under this Policy," which can include "disability or Retirement Benefits under the United States Social Security Act." (AR at 172 (emphasis added).)

Defendant claims that, because Plaintiff began collecting Social Security benefits during the same year that he became disabled, those Social Security benefits "result[] from the same" disability for which he receives long-term disability benefits, thus rendering the offset proper. (ECF No. 58 at 4.) Plaintiff responds that his Social Security benefits are not Social Security

3

disability benefits but are instead benefits from earned income. (ECF No. 57 at 2–3.) Earned-income Social Security benefits do not "result" from a long-term disability, as those benefits vest with an individual irrespective of their disability status, provided that they have met certain work history requirements.[1] Social Security also provides benefits that directly "result" from a disability, which are known as Social Security Disability Insurance ("SSDI").[2] Thus, Plaintiff contends this his Social Security benefits, given that they constitute earned-income benefits and do not "result" from his disability, cannot be offset against his long-term disability payments under the terms of Defendant's Plan. Plaintiff also argues that exhaustion does not pose a barrier to the Court ruling on this issue, even though Plaintiff has not received an official adverse determination regarding the offset and has not appealed Defendant's offset determination internally. (ECF No. 59 at 2.) In support, Plaintiff suggests that exhaustion poses a bar only to entering federal courts, but once a federal court has jurisdiction over a benefits determination, the Court may adjudicate disputes related to a benefits assessment. (*Id.*)

The Court finds that it has jurisdiction to rule on the instant dispute. It first reviews its authority to do so, and then considers the merits of Defendant's offset determination.

## II. DISCUSSION

### A. Exhaustion Poses No Bar to Adjudicating the Instant Dispute

The parties disagree about whether the Court can adjudicate the instant dispute, given that Plaintiff has not utilized Defendant's internal appeals process and therefore has allegedly not satisfied ERISA's exhaustion requirement. (ECF No. 58 at 2.) Plaintiff suggests that a

---

[1] SOCIAL SECURITY ADMINISTRATION, *Social Security Entitlement Requirements* (last accessed May 2, 2024), https://www.ssa.gov/ssi/text-entitle-ussi.html [https://perma.cc/8S2W-Q3GE].

[2] SOCIAL SECURITY ADMINISTRATION, *Disability Benefits – How You Qualify* (last accessed May 2, 2024), https://www.ssa.gov/benefits/disability/qualify.html [https://perma.cc/2A48-9WLF].

piecemeal approach to exhaustion is unnecessary and not required under ERISA, as exhaustion poses a bar only to entering federal courts, which applies to the claim overall, not to each discrete dispute. (ECF No. 59 at 2.) Plaintiff's position is correct for two independent reasons.

First, courts routinely retain jurisdiction to enforce their own judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (quotations omitted). This applies equally to ERISA, despite the statute's exhaustion requirement. *Schindler v. Unum Life Ins. Co. of Am.*, 2013 WL 4499146 (D.S.C. Aug. 19, 2013). Given that the Court entered judgment in Plaintiff's favor on his benefits claim after Defendant had the opportunity to provide its own assessment of the benefits claim, it maintains jurisdiction to adjudicate disputes integrally related to that judgment, as is the case here. *Cf. Pakovich v. Broadspire Services, Inc.*, 535 F.3d 601, 605 (7th Cir. 2008) (ordering district court to remand to plan administrator, because plan administrator had "not issued a decision on a claim for benefits").

Second, even if exhaustion constituted a barrier to hearing the instant dispute, Plaintiff need not demonstrate exhaustion here. While it is "generally true" that "a claimant must exhaust the administrative remedies provided in an employee benefit plan before prosecuting an ERISA claim in federal court," a "clear and positive showing that such exhaustion would be futile will circumvent this requirement." *DuPerry v. Life Ins. Co. of North America*, 632 F.3d 860, 875 (4th Cir. 2011). The Court finds that this logic applies equally to discrete issues in benefits claims that are already properly before a federal court, like the one here. This is especially so, given that the parties' dispute centers on statutory interpretation, which constitutes a legal question, whereas exhaustion serves the purpose of ensuring that federal courts are not bogged

down by, for instance, the deep factual issues that must be developed before a disability benefits determination can be made.

Moreover, Plaintiff need not pursue his interpretation of Defendant's offset policy through Defendant's internal appeals process, as there exists a "clear and positive showing of futility." Defendant has already stated its position, and there exist no facts that could be developed that would reasonably change it, given that this issue stands as a question of law. Indeed, in those circumstances where courts have ruled that a decision should be remanded for review by the ERISA plan administrator, they have done so in light of an insufficient administrative record relevant to a fact-bound question, like an initial disability determination. *See Newsom v. Reliance Standard Life Ins. Co.*, 26 F.4th 329, 338 (5th Cir. 2022) (remanding case to plan administrator, because "the merits evidence" on claimant's disability was "at best incomplete"). Here, by contrast, the full administrative record of this case is already before the Court, further demonstrating the propriety of the Court assessing the merits of the instant dispute. In sum, assuming that exhaustion applies, "[t]his is one of those rare cases where a remand to a plan administrator would serve no purpose." *DuPerry*, 632 F.3d at 876. When a remand would serve no purpose, futility has been shown, and the Court therefore declines to require that Plaintiff fully exhaust his internal remedies as to the question of whether Defendant has abused its discretion in interpreting the terms of its Plan related to the benefits offset.

### B. Plaintiff's Earned Income Social Security Does Not Constitute "Other Income"

The Court now turns to assessing the merits of the instant dispute: whether Plaintiff's Social Security benefits may be properly offset against his long-term disability benefits. The Court concludes that Defendant's Plan is unambiguous; it does not permit offsetting Plaintiff's Social Security benefits, as they result from his earned income, rather than his disability, and

6

Defendant's plan permits offsetting only those Social Security benefits "resulting from the same Total Disability for which a Monthly Benefit is payable." (AR at 21.)

### 1. The Distinction Between Earned-Income Social Security Benefits and Social Security Disability Insurance

The centrality of the distinction between earned-income Social Security benefits and Social Security Disability Insurance ("SSDI") benefits to this dispute merits a brief primer on the two. The SSA provides four types of benefits: retirement, disability, survivor and supplemental Social Security benefits. Only the first two qualify as relevant here. Earned-income Social Security benefits are available to all taxpayers if they have met certain work history criteria.[3] One can start receiving earned-income Social Security benefits at as early as age 62, but it is in one's interest to delay taking earned-income Social Security benefits until reaching "full retirement age," which ranges from 66 years old to 67 years old depending on one's birth year, as taking earned-income benefits before "full retirement age" reduces the benefit amount by 25 to 30 percent.[4] Furthermore, the SSA incentivizes further delays to taking earned-income Social Security benefits even after taxpayers reach their "full retirement age," as every extra month of delay after reaching retirement age results in a percentage increase to the earned-income Social Security benefit. For instance, an individual whose "full retirement age" is 66, but delays taking payments until they are 67, would receive 106.7 percent of their earned-income Social Security benefit.[5] This scale increases until age 70, at which point one has maxed out their earned-income

---

[3] *See supra* Note 1.

[4] SOCIAL SECURITY ADMINISTRATION, *Starting Your Retirement Benefits Early* (last visited May 2, 2024), https://www.ssa.gov/benefits/retirement/planner/agereduction.html [https://perma.cc/5YEB-SA7E].

[5] SOCIAL SECURITY ADMINISTRATION, *How Delayed Retirement Affects Your Social Security Benefits* (last visited April 29, 2024), https://www.ssa.gov/benefits/retirement/planner/1955-delay.html [https://perma.cc/2QS2-TDT5].

7

Social Security benefit. Thus, the decision to take out earned-income Social Security benefits between the ages of 62 and 70 is a completely personal one, dependent on one's finances and individualized circumstances, and the existence or absence of a disability has no effect on if or when one can claim earned-income benefits.

Eligibility for SSDI, by contrast, does not turn on one's age. Instead, eligibility depends on whether one has a qualifying disability and sufficient work history.[6] Such benefits are awarded once the SSA has provided a favorable determination in a claimant's favor, which requires that the claimant demonstrate the existence of a sufficiently severe impairment. Unlike earned-income benefits, claimants of any age can apply for SSDI, and the age of the claimant dictates how much work history is required to be eligible for disability benefits.[7] Thus, SSDI results from one's disability, whereas earned-income Social Security benefits result from one's age.

### 2. Defendant's Plan

The Court now turns to reviewing the terms of Defendant's Plan, which governs this dispute. When plans are covered by ERISA and their terms are unambiguous, they are enforced as written, without deference to the plan administrator's interpretation. *Ret. Comm. of DAK Americas LLC v. Brewer*, 867 F.3d 471 (4th Cir. 2017); *Fuller v. Liberty Life Assurance of Boston*, 302 F.Supp.2d 525, 535 (W.D. N.C. 2004).

Here, Defendant's plan states that "Other Income Benefits" may be offset against a claimant's long-term disability benefits. (AR at 21, 172.) The Plan defines "Other Income Benefits," in relevant part, as those "resulting from the same Total Disability for which a

---

[6] *Supra* Note 2.

[7] SOCIAL SECURITY ADMINISTRATION, *Social Security Credits* (last visited April 27, 2024), https://www.ssa.gov/benefits/retirement/planner/credits.html [https://perma.cc/C54A-BBMS].

Monthly Benefit is payable under the Policy," which includes "disability or Retirement Benefits under the United States Social Security Act." (*Id.*) Defendant argues that Plaintiff's Social Security benefits result from his "Total Disability," as Plaintiff took out his earned-income Social Security benefits and became totally disabled at roughly the same time. (ECF No. 58 at 4.) The interpretive question thus boils down to whether Social Security benefits stemming from earned income, contrasted with SSDI benefits, can be interpreted to fall within the ambit of Defendant's definition of "Other Income Benefits," given that such benefits must "result from the same Total Disability" as the one "for which a Monthly Benefit" is payable.

The "literal and natural meaning" of Defendant's plan plainly refers to Social Security disability benefits, rather than Social Security earned-income benefits, as only the former *results* from a disability, while the latter has no relationship to one's disability. *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998). The literal meaning of Defendant's plan, which is the meaning that governs, envisions offsetting only those Social Security benefits with a causal relationship to the disability for which benefits are being paid. *See Resulting*, MERRIAM-WEBSTER (2024) ("Resulting: to proceed or arise as a consequence, effect or conclusion."). When other courts have interpreted language that qualifies as nearly identical to that found in Defendant's plan, they have likewise found that benefits resulting from "the same" disability means benefits stemming from "the same inability to work," rather than benefits that are unrelated to one's disability, like earned-income Social Security benefits. *Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 925 (5th Cir. 2008); *Bacquie v. Liberty Mut. Ins. Co.*, 435 F. Supp.2d 318, 328 (S.D.N.Y. 2006), *aff'd*, 247 F. App'x 296 (2d Cir. 2007). Indeed, where a Social Security benefit has been offset against a long-term disability benefit under plans with functionally identical language, the Social Security benefit has been a *disability* benefit rather

9

than an earned-income benefit. *See e.g., Paulson v. Guardian Life Ins. Co.*, 2024 WL 422664, at \*5 (E.D. Va. Feb. 5, 2024); *Preview Fortune v. Grp. Long Term Disability Plan for Emps. of Keyspan Corp.*, 637 F. Supp. 2d 132 (E.D.N.Y. 2009); *Bacquie v. Liberty Mut. Ins. Co.*, 247 F. App'x 296, 298 (2d Cir. 2007); *Garst v. Wal-Mart Stores, Inc.*, 30 F. App'x 585 (6th Cir. 2002). Defendant provides no evidence that a court has interpreted earned-income Social Security benefits to "result from" an eligible disability.

Moreover, in a case where Defendant here was also the named defendant, the court remarked — in interpreting language *identical* to that here — that "a straightforward reading of the contract states that if an insured, the plaintiff, is eligible to receive benefits under the Social Security Act *due to his Total Disability*, then these benefits qualify as other income benefits." *Hann v. Reliance Standard Life Ins. Co.*, 2011 WL 1344516, at \*6 (M.D. Pa. Mar. 18, 2011) (emphasis added). No Court has ignored the Plan's plain language, which creates a relationship between the reason one receives Social Security benefits and the disability under review. This Court will not be the first.

Practical realities also support the conclusion that the reasonable and straightforward interpretation of Defendant's policy excludes earned-income Social Security benefits from its definition of "Other Income," even when they are claimed at roughly the same time one becomes disabled. First, as Defendant points out, its theory would permit the definitions of its own Plan to change from one day to the next, as whether earned-income Social Security constitutes "Other Income" can apparently hinge on whether it was taken out before a claimant files for long-term disability benefits, inserting unpredictability that ERISA is designed to guard against. (ECF No. 58 at 4 ("If a person collects Social Security Retirement Benefits *before* claiming disability, then the offset would not apply."); *Cf. Conkright v. Frommert*, 559 U.S. 506, 517 (2010)

10

(emphasizing that ERISA creates a "predictable set of liability, under uniform standards of primary conduct"). That Defendant's definition hinges on the contemporaneity between taking Social Security benefits and becoming disabled would also invite gamesmanship, as a claimant filing for disability benefits with Defendant would be encouraged to delay taking earned-income Social Security, as the delay between the disability determination and taking benefits would apparently lead Defendant to find that the Social Security benefits did not result from the disability and therefore could not constitute an offset. However, it would be bizarre for the interpretation of a legal term to be contingent on factors such as when a claimant opts to claim their earned-income Social Security, as statutory interpretation does not hinge on such individualized and unpredictable whims. Indeed, Plaintiff may have taken out his earned-income Social Security benefits, because he was being erroneously deprived of his Long-Term Disability Benefits during the pendency of this litigation. The Court cannot permit Defendant to benefit from its own delay in disbursing benefits to which claimants are rightfully entitled.

Second, Defendant's own distinction concedes the fact that not all Social Security benefits may be offset against a long-term disability benefit. The only reasonable way to distinguish between the types of Social Security benefits that may be offset, versus those that cannot, can be informed by Defendant's own policy, which states that only those benefits "resulting from the same Total Disability" may be offset. (AR at 21, 172.) In other words, the dividing line between Social Security benefits that may be offset under the plain language of Defendant's Plan hinges on whether the Social Security benefits arise as a consequence of a claimant's disability, or if instead they arise from a claimant's age.

Defendant further argues that its interpretation, which depends on when a claimant files for Social Security rather than *why* they are receiving Social Security benefits, is appropriate as it

11

gives independent meaning to each part of the Plan, whereas Plaintiff's renders parts of the Plan meaningless. (ECF No. 58 at 4.) Specifically, Defendant points to language in the Plan noting that "the offset for Social Security Retirement Benefits 'will not apply to disabilities which begin after age 70 for those insureds already receiving Social Security Retirement Benefits while continuing to work beyond age 70.'" (ECF No. 58 at 5 (citing AR at 21).) To be sure, Defendant makes a valid point that this provision remains difficult to square with the Court's interpretation of other parts of the Plan. However, this cuts in both directions. If Defendant's interpretation of the offset provision were adopted, many more portions of the Plan would become meaningless or internally inconsistent. For instance, Defendant's interpretation effectively asks the Court to read out key words of the Plan, like those requiring permissible offsets to "result from" the same disability for which long-term disability benefits are authorized. As the Fourth Circuit has already told Defendant, its "discretion never includes the authority to read out unambiguous provisions contained in an ERISA plan." *Blackshear v. Reliance Standard Life Ins. Co.* 509 F.3d 634, 639 (4th Cir. 2007). Indeed, Defendant repeats in its Plan that only income "resulting from" a disability may be offset, at times in all capital letters, indicating that only benefits received "AS A RESULT OF [ONE'S] DISABILITY" can constitute "Other Income." (AR at 21, 172.)

Underscoring the Court's interpretation is the fact that other long-term disability plans do not feature the crucial "resulting from" language, indicating that Defendant — as a sophisticated insurance company — intends for those words to have substantive effect within its own Plan. For instance, some plans define the Social Security offset more expansively, as "[a]ny amount you . . . are eligible to receive because of your disability *or retirement* under the Federal Social Security Act." *Grooman v. Northwestern Mut. Life Ins. Co.*, 200 F. Supp. 2d 523, 529 (D. Md.

12

2002) (emphasis added). Others note that "Other Income Benefits" that may be offset include "retirement benefits" that are "provided for under any law of a government." *Arnone v. Aetna Life Ins. Co.*, 2015 WL 3915607, at *1 (E.D.N.Y. June 25, 2015). The language in those plans clearly envisions *all* Social Security benefits as able to be offset against a disability benefit, rather than only those *resulting* from the same total disability, which comprise the language of Defendant's plan. These distinctions are material, as ERISA plan administrators compete in a competitive market, and one way to distinguish themselves is by the terms of their plan. To "ensure the integrity of written, bargained-for benefit plans," the Court must enforce its plain terms. *Stinnett*, 154 F.3d at 172.

### C. Application of the *Booth* Factors

The Court now turns to applying the Fourth Circuit's test for determining whether an ERISA Plan Administrator's interpretation is reasonable. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the [plan administrator's] interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA (7) any external standard relevant to the exercise of discretion; and (8) the [plan administrator's] motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000). To be sure, many of these factors are awkward fits for the instant interpretative question, which constitutes a purely legal issue rather than one bound up in facts, like a disability determination. However, the Fourth Circuit has applied *Booth* even to interpretive questions related to offsets, and this Court thus follows suit. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 263 (4th Cir. 2009).

The first *Booth* factor concerns whether the plan's language provides the plan administrator with discretion, which thus entitles it to abuse-of-discretion review, and whether Defendant's interpretation of the plan qualifies as reasonable. *Booth*, 201 F.3d at 344. Here, the Court finds that Defendant's interpretation is not entitled to abuse-of-discretion review, as the terms related to this portion of Defendant's Plan are not ambiguous, and "interpretive discretion applies only to ambiguities in the plan." *Blackshear*, 509 F.3d at 639. "[D]iscretionary authority is not implicated [where] the terms of the plan itself are clear," and thus this aspect of the Plan could be subject to *de novo* review. *Kress v. Food Emp'rs Labor Relations*, 391 F.3d 563, 567 (4th Cir. 2004).

However, even if it stands ambiguous whether earned-income Social Security benefits "result from" a disability, and therefore interpretive discretion exists, the Court finds Defendant's interpretation of the offset policy to be patently unreasonable, constituting an abuse of discretion, as Defendant ignores crucial language to benefit itself. The "literal and natural meaning" of Defendant's Plan, which is the meaning that must govern, permits only those Social Security payments that "result from the same Total Disability" as the one underlying the long-term disability benefit to be offset. *Stinnett*, 154 F.3d at 172. However, when one takes out *earned-income* Social Security benefits, those benefits do not "result from" a disability; they result from having had a job. It would be unreasonable to construe this provision otherwise.

The second *Booth* factor, related to whether Defendant's interpretation furthers the goals of its Plan, is neutral. The goals of the Plan could be furthered by Defendant's interpretation, as reducing benefits here could allow it to increase benefits paid to other claimants. However, its goals must also include paying out the bargained-for benefits owed to its claimants under its Plan and, as the Court has articulated, its interpretation of the offset policy contravenes that goal. The

Court likewise finds that the third factor, relating to the adequacy of the evidence, to also be neutral, as it stands more relevant to a determination stemming from an assessment of the evidence rather than a legal interpretation like the one here.

The fourth *Booth* factor, which focuses on administering interpretations that are consistent with the Plan's provisions, and with earlier interpretations of the Plan, weighs in Plaintiff's favor. As described above, Defendant's interpretation nullifies operative language of its Plan, rendering its interpretation inconsistent with the Plan's plain, straightforward language. Moreover, while Defendant has not interpreted this Plan as to this Plaintiff, it has litigated interpretation of the same language in the Middle District of Pennsylvania, which informed Defendant that when its Plan's language created a relationship between Social Security benefits and disability benefits, that language must be given interpretive force. *See Hann*, 2011 WL 1344516, at *6 (M.D. Pa. Mar. 18, 2011) ("A straightforward reading of the contract states that if an insured, the plaintiff, is eligible to receive benefits under the Social Security Act *due to his Total Disability*, then these benefits qualify as other income benefits.") (emphasis added). Accordingly, the Court concludes that Defendant has been inconsistent in its contractual interpretation within the four corners of the Plan and across time.

The fifth *Booth* factor, in a similar vein to the third *Booth* factor, relates to whether Defendant's decision-making process qualifies as reasoned and principled. Like the third factor, however, this factor does not squarely apply to the interpretation of a legal question. Thus, the Court weighs this factor weighs neutrally.

The sixth and seventh *Booth* factors concern procedural safeguards and external standards relevant to the exercise of discretion. The Court finds these inapposite to the interpretation of the textual question here. However, the eighth *Booth* factor requires the Court

to consider Defendant's motives and any conflicts of interest. Here, Defendant has a business interest in paying out as little as possible, constituting a conflict of interest that counts against its position. *See Booth*, 201 F.3d at 343 n.2 ("We have held that a court, presented with a fiduciary's conflict of interest, may lessen the deference given to the fiduciary's discretionary decision to the extent necessary to neutralize any untoward influence resulting from that conflict."). Thus, the sixth and seventh factors are neutral, while the eighth weighs against Defendant.

Importantly, the eight *Booth* factors are not exhaustive of what the Court may consider on appeal. *Id.* at 342. Thus, in addition to the *Booth* factors, the Court takes notice that it has already ruled twice that Defendant has abused its discretion: first, by not assessing the risk of future harm, and second, for continuing to ignore that harm and for refusing to comply with the Court's mandates on remand. While Defendant is correct that ERISA does not sanction a "one-strike-and-you're-out" approach, the Supreme Court has acknowledged that "multiple erroneous interpretations" cut against finding that a subsequent interpretation is reasonable, especially when it endangers "the prompt resolution of disputes over benefits, driving up litigation costs." *Conkright*, 559 U.S. at 513, 521. The Supreme Court's warning applies here, and the Court thus also weighs against Defendant that it has abused its discretion at every turn in this litigation.

In sum, the first, fourth and eighth factors weigh toward finding an abuse of discretion, while the second, third, fifth, sixth and seventh factors weigh neutrally, given that they are relatively inapposite to the litigation of a purely legal question. Moreover, the Court underscores that in addition to these factors, Defendant's track record before this Court does not help its case. Taken together, the Court concludes that Defendant's interpretation — if it even merits abuse-of-discretion-review — constitutes an abuse of discretion, as it ignores operative language of its

Plan. Defendant's Plan only permits Social Security benefits "resulting from the same Total Disability for which a Monthly Benefit is payable under the Policy" to be offset, which plainly excludes Social Security benefits that do not result from that disability. A contrary interpretation constitutes an abuse of discretion.

### III.  CONCLUSION

For the reasons stated, Defendant may not offset the long-term disability benefit that it owes Plaintiff by the amount of his earned-income Social Security benefit. Earned-income benefits, by definition, do not result from a disability; they result from earning income. The Court ORDERS that Defendant forthwith provide Plaintiff with his benefits accordingly.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: May 14, 2024

17